## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LUTGARDO ACEVEDO-LOPEZ,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

**Civil No. 19-1331 (ADC)**
**[Related to Crim. No. 14-380-02 (ADC)]**

## OPINION AND ORDER

Pending before the Court is Lutgardo Acevedo-López's ("petitioner") motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. **ECF No. 1**. The government opposed. **ECF No. 37**. For the following reasons, the Court **DENIES** petitioner's motion.

### I.  Factual and Procedural Background[1]

On June 30, 2012, petitioner was involved in a car accident that caused the death of the other driver. In response, petitioner was charged by state prosecutors with aggravated negligent homicide, obstruction of justice, and driving under the influence of alcoholic beverages.

In November 2012, Ángel Román–Badillo ("Lito"), a long-time acquaintance of petitioner, met with then state court Superior Judge, Manuel Acevedo-Hernández ("Acevedo-Hernández"), the judge's brother, Saúl Acevedo–Hernández ("Saúl"), and nephew,

---

[1] The Court incorporates the First Circuit's factual and procedural background from petitioner's appeal. *See United States v. Acevedo-López*, 873 F.3d 330, 333-35 (1st Cir. 2018).

Miguel Acevedo–Manjo ("Miguel") at a restaurant. They discussed petitioner's case and ways to help petitioner.

Acevedo-Hernández commented that petitioner's criminal case was delicate and that it "could not be worked on, not even for $100,000." However, Acevedo-Hernández eventually named his price. He wanted to use petitioner's political connections to gain a seat on the state appellate court and government jobs for his family. Acevedo-Hernández eventually agreed to provide petitioner with favorable treatment during the judicial proceedings.

From November 2012 to April 2013, Lito (acting on behalf and for the benefit of petitioner) invited Acevedo-Hernández, Saúl, Miguel, and other friends to bars and restaurants. Petitioner paid for everything. Through Lito, petitioner also: (1) paid Acevedo-Hernández's pending state income tax debt; (2) bought Acevedo-Hernández gifts; (3) arranged for construction improvements on Acevedo-Hernández's garage; and (4) purchased a motorcycle for Acevedo-Hernández.

Petitioner also pulled strings to procure a seat on the Puerto Rico Court of Appeals for Acevedo-Hernández. Specifically, since December 2012, petitioner arranged meetings between Acevedo-Hernández and Anaudi Hernández, a businessman with strong political connections to the then-Governor-elect who had previously helped another judge get reappointed. Petitioner's brother, Lutgardo Acevedo–López II ("Bebé"), told Anaudi Hernández that he wanted to introduce a friend who aspired to be an appellate judge. A few weeks later, on

January 21, 2013, Lito drove Acevedo-Hernández to Anaudi Hernández's residence to discuss Acevedo-Hernández's potential appointment to the appellate court. During the meeting, Acevedo-Hernández's told petitioner that his dream was to retire as an appellate judge.

In return for these inducements, Acevedo-Hernández met his end of the deal and provided help with Petitioner's case from the bench. Between January and March 2013, petitioner provided Acevedo-Hernández with draft court filings for his review and advice prior to filing. Further, on March 22, 2013, Acevedo-Hernández met with Lito to discuss petitioner's case and provide strategic legal advice in order to obtain the dismissal of the criminal charges. On March 27, 2013, Acevedo-Hernández acquitted petitioner of all charges.

On April 5, 2013, Lito drove Acevedo-Hernández to a seminar sponsored by the Puerto Rico's Court Administration System. Later that day, Puerto Rico police officers stopped Lito, still with Acevedo-Hernández, for suspected driving while under the influence of alcohol. Acevedo-Hernández intervened on Lito's behalf, but as fate would have it, some of the officers had also been involved in the case against petitioner. Thus, the officers were able to identify Lito as petitioner's associate. Evidently, this raised concerns about the Acevedo-Hernández's association with Lito. Eventually, the police officers' well-founded concerns led to a federal investigation.

On June 3, 2014, federal officers arrested petitioner in the Southern District of Florida.[2] On June 6, 2014, a magistrate judge in the Southern District of Florida ordered that petitioner be detained and removed to the District of Puerto Rico. On July 14, 2014, the district court for the District of Puerto Rico conducted a de novo detention hearing and reinstated the Florida magistrate's detention order.

On August 14, 2014, petitioner entered into a plea agreement. The parties stipulated to a total offense level of 23, but petitioner's presentence investigation report (the "PSR") initially recommended a total offense level of 29. Petitioner filed several objections to the PSR. In response to those objections, the probation officer issued an addendum to the PSR on November 3, 2015. The addendum included a revised calculation of the benefits received by Acevedo-Hernández under U.S.S.G. § 2C1.1(b)(2), which reduced the recommended total offense level from 29 to 27.

The district court held a sentencing hearing on November 6, 2015. Among other things, the district court found that the annual salary increase that Acevedo-Hernández would have received if he had been appointed as an appellate judge, totaling $123,200 over 8 years, was to be included in calculating the value of the bribe under U.S.S.G. § 2C1.1(b)(2). The district court also found that the conspiracy involved at least 5 criminally responsible participants and was also otherwise extensive under U.S.S.G. § 3B1.1(a). Altogether, the district court calculated a

---

[2] Petitioner was in Florida because he voluntarily commenced an in-patient mental health and alcohol abuse treatment at Hanley Center on April 26, 2014. **Crim. No. 14-380, ECF Nos. 26-3 at 32-33; 259 at 25.**

total offense level of 27, a Criminal History Category (CHC) of I, which provided for a

sentencing range of 70 to 87 months of imprisonment. After reviewing the 18 U.S.C. § 3553(a)

factors, however, the district court determined that "the circumstances surrounding this offense

fall completely out of the heartland of the Sentencing Guidelines," and so "a variance [was]

warranted." Considering "the seriousness of the offense and all of the factors," the district court

therefore sentenced Petitioner to 108 months of imprisonment, 1 year less than the statutory

maximum.

## II.     Discussion

Petitioner's 63-page motion[3] advances 5 instances of ineffective assistance of trial counsel

and 3 violations of due process. **ECF No. 1**. The government opposes arguing that petitioner's

claims have been procedurally defaulted and are meritless. **ECF No. 37**. The Court will analyze

each of petitioner's arguments in turn.

### a.   Ineffective Assistance of Trial Counsel[4]

To review a claim of ineffective assistance of counsel, the Court must assess whether

counsel's conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied upon as having produced a just result. *See Strickland v. Washington*, 466 U.S. 668,

685-87 (1984). To succeed in a claim of ineffective assistance of counsel, a petitioner must show

---

[3] The government argues that the Court need not reach the merits of the § 2255 petition for noncompliance with the 25-page limit of Local Rule 7(e) because the Court did not provide leave to exceed the limit. **ECF No. 37 at 2 n.2** (*citing* D.P.R. L.Cv.R. 7(e) (2020)). The Court disagrees because it provided *nunc pro tunc* leave. **ECF No. 45.**

[4] Attorney Rachel Brill  as retained counsel assumed Petitioner's representation since 2014.

that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to petitioner. *See United States v. Carrigan*, 724 F.3d 39, 44 (1st Cir. 2013). Furthermore, the *Strickland* test is bifurcated. *See Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010). Failure to prove either prong proves fatal for the other. *See United States v. Caparotta*, 676 F.3d 213, 219 (1st Cir. 2012).

    i. *Mental Competency*

Petitioner argues that his trial counsel was ineffective because she failed to have him evaluated for mental competency pursuant to 18 U.S.C. § 4241 despite knowing that he recently received mental health and addiction therapy at the Hanley Center in Florida. **ECF No. 1 at 11-14**. He also posits that counsel was ineffective for failing to interject at the change-of-plea hearing when petitioner denied having been treated for a mental or emotional condition. *Id.* Therefore, petitioner believes the Court was not able to determine whether his medications affected his ability to enter a voluntary and intelligent plea. *Id.* (*citing United States v. Parra-Ibanez*, 936 F.2d 588, 594 (1st Cir. 1991)). He asserts that if his counsel had informed the Court that he was suffering from a mental defect, then there is a reasonable probability that the Court would have found petitioner unfit to plead voluntarily and intelligently. *Id.* According to a report by Dr. Ibzán Pérez Muñoz issued on April 8, 2019, petitioner did not have the "mental clarity" or "mental function sufficient" to understand what pleading guilty entailed. *Id.* (citing **ECF No. 3-**

**1 at 1-2**). Put succinctly, petitioner suggests that his counsel's failure to request a mental competency evaluation resulted in an involuntary and unintelligent plea.

The government opposes by first noting that petitioner does not state that he would have not plead guilty but for his counsel's ineffectiveness. **ECF No. 37 at 15**.

It is well-settled law that the voluntariness of a guilty plea can be questioned on collateral review under 28 U.S.C. § 2255 only if, and to the extent that, the plea has been challenged on direct appeal. *See Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005) (*citing Bousley v. United States*, 523 U.S. 614, 621-23 (1998)). If a petitioner challenges his conviction or sentence on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted. *Id.* A procedurally defaulted habeas petition will be allowed to proceed if the petitioner can show either that: (1) there is cause for the default and (2) actual prejudice resulting from it.[5] *Id.*

On appeal, petitioner did not challenge that his guilty plea was involuntary or unintelligent. *See United States v. Acevedo-López*, 873 F.3d 330, 335-42 (1st Cir. 2018). As such, this claim has been procedurally defaulted. Petitioner does not make the argument that constitutionally ineffective assistance of counsel, at trial or on direct appeal, in failing to preserve a claim for review may constitute cause for default. *See Lee v. Corsini*, 777 F.3d 46, 59 (1st Cir.

---

[5] Petitioner could also assert actual innocence to excuse his procedural default but did not do so. Thus, this claim has been waived. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 239-40 (1st Cir. 2013) (holding that arguments not raised in an opening brief are waived).

2015). Thus, petitioner's procedurally defaulted claim cannot be excused. In addition, petitioner does not show that he was prejudiced by the lack of a mental evaluation.

To establish actual prejudice from the asserted violation of federal law, a petitioner must show "a reasonable probability that, but for [the] errors, the result of the proceeding would have been different." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). A petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In the context of a guilty plea, to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, petitioner does not allege that he would have forgone pleading guilty and instead risk trial but for counsel's ineffectiveness of not requesting a mental evaluation. Rather, he states that "if counsel had informed the Court at the change-of-plea hearing or filed a motion pursuant to 18 U.S.C. § 4241(a) there was a reasonable probability that petitioner would have been found unfit to voluntarily and intelligently plea guilty." **ECF No. 1 at 14**. The petitioner remarks that the Court would have found petitioner to be mentally incompetent to plead but for his counsel's error in not requesting an evaluation. This is different than asserting that he would not have changed his plea and would have proceeded to trial but for his counsel's mistake. Consequently,

petitioner's claim of ineffective assistance of counsel based on a failure to request a mental competency evaluation is procedurally defaulted and cannot be excused because he did not allege actual prejudice from such failure.

Furthermore, the government opposes arguing that the record demonstrates that petitioner was competent. **ECF No. 37 at 16-18**. The Court agrees.

The test for competency is whether petitioner was able to understand the proceedings against him and consult rationally with his counsel so as to assist in his own defense. *See United States v. Malmstrom*, 967 F.3d 1, 5 (1st Cir. 2020) (*citing United States v. Brown*, 669 F.3d 10, 17 (1st Cir. 2012)).

Defendant appeared before multiple judicial officers: once at the detention hearing in Florida, next upon his transfer to Puerto Rico at the time reconsideration of bail was requested and at the arraignment. At all times, upon court inquiry, petitioner was found competent. **Crim. 114-3380, ECF No. 19**.

Petitioner—a former lawyer, police officer, and certified public accountant—displayed his understanding of changing his plea to guilty. *See United States v. Caramadre*, 807 F.3d 359, 368 (1st Cir. 2015) (holding that a district court may reasonably rely on the assurances of the defendant and his counsel to help to ascertain the defendant's mental clarity at a change-of-plea hearing). He represented to the Court (convincingly) that he was fully aware of the nature of the charges against him and explained them in his own words as well as their corresponding

penalties. **Crim. No. 14-380, ECF No. 42 at 6-7, 8-11**. The Court finds that the record is replete with evidence that petitioner was mentally competent because he participated meaningfully in plea colloquy. *See Aponte-Ramos v. United States*, 391 F. Supp. 3d 183, 192 (D.P.R. 2019); *Feliciano-Rivera v. United States*, 115 F. Supp. 3d 243, 252 (D.P.R. 2015).

For example, during the change of plea hearing, the Court asked, and petitioner responded as follows:

> THE COURT: … [H]ave you been able to discuss with both attorneys[6] the substance and contents of that indictment?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And have you been able to discuss with both counsel the penalties to which you may be subjected for the offenses charged in that indictment?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And have you discussed with either one or with both attorneys, the discovery, that means the evidence that the government has in its possession and intended to present at trial against you?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And have you had sufficient time to discuss with both or either one and mainly with attorney Brill, the options that you had, one being your Constitutional right to a trial, and second, your option of pleading guilty?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And has she been able to clarify for you doubts that you had and information that you needed in the process of you reaching and making a final determination as to the course of action that you want to follow?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Let me ask you this, are you satisfied with the services rendered by attorney Esther Castro and attorney Rachel Brill?
> THE DEFENDANT: Yes, Your Honor.

---

[6] Attorneys Esther Castro and Rachel Brill. However, as noted above, Attorney Rachel Brill was Petitioner's counsel throughout the change of plea proceedings.

THE COURT: At this time I find that this defendant is fully aware of the nature of the charges and that he is satisfied with the services of both attorneys.

…

THE COURT: … [I]n terms of the charges in the indictment Mr. Acevedo, let me ask you, the notice that I received based on the plea agreement is that you intend to plead guilty to Count 1 and 2, can you tell me in your own words what is it that you are being charged with in Count 1?

THE DEFENDANT: Conspiracy.

THE COURT: To do what?

THE DEFENDANT: To commit a crime against the United States.

THE COURT: That crime is that of doing what?

THE DEFENDANT: Bribery.

THE COURT: A bribe as described in the indictment to corruptly give, offer and agree to give something of value to a Puerto Rico Superior Court Judge, which was acting as an agent of the Judiciary of the Commonwealth of Puerto Rico, with the intent of influencing and rewarding that Judge in connection with the business or transactions pending before him. Do you understand that to be the nature of the charge?

THE DEFENDANT: Yes, Your Honor

THE COURT: Conspiracy means in the commission of that offense of bribery you associated yourself or were assisted or were in contact in order to achieve that with two or more persons. Is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Very well. Can you tell me if you plead guilty and your plea of guilty to Count 1 were to be accepted what is the penalties to which you are exposed for that offense?

THE DEFENDANT: Five years, maximum.

THE COURT: And what is the fine to which you will be subjecting yourself?

THE DEFENDANT: $250,000.00.

THE COURT: That is so. I advise you that for the offense in Count 1 you are subjecting yourself to a maximum term of imprisonment of up to five years, a fine not to exceed $250,000.00 and a supervised release term of not less than three years. That in addition to any term of incarceration that may be imposed. Is that your understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: As to Count 2, which is described in the indictment as paying a bribe to an agent of an organization receiving Federal funds. What is your understanding of those charges?

THE DEFENDANT: Bribery.

THE COURT: The bribery. That is so, in Count 2 the government has to establish that the Judiciary of Puerto Rico is an entity receiving $10,000.00 or more from Federal funds and actually there were a series of persons that aided and abetted in order to corruptly give, offer and agree to give a thing of value to a person within the Judiciary in exchange or to influence or reward that member of the Judiciary to use his official position and assist you or provide favorable treatment to you in a criminal case that you had pending before that court. Are you aware of that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: What are the penalties to which you are subjected were your plea of guilty to be accepted as to Count 2?

THE DEFENDANT: Ten years maximum.

THE COURT: That is correct. Were the plea of guilty to be accepted you are exposing yourself to a term of imprisonment of up to ten years, a fine not to exceed $250,000.00, and a term of supervised release of not less than three years in addition to any term of incarceration, is that your understanding?

THE DEFENDANT: Yes, Your Honor.

…

THE COURT: Do you understand what concurrent and consecutive means?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You can explain that to me?

THE DEFENDANT: Consecutive is that I will start one after I finish the other one, and concurrent is doing them at the same time.

THE COURT: That is correct. The term imposed for one count in consecutive is after. Concurrent simply means that the larger term will absorb the smaller term. So, that means that in Count 1 the sentence to which you are exposed is up to five years, that is like saying that you can be sentenced to a term of imprisonment that may go from zero time in jail to one day up to five years. Count 2 the same thing, one day in jail up to ten years in jail. Are you clear on that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I want you to have clear the penalties. The Court is required to consider the Sentencing Guidelines. Have you discussed those with your counsel?

THE DEFENDANT: Yes, Your Honor.

**ECF No. 42** at 6-13. The short extract transcribed above is only a sample of many interactions petitioner had during his change of plea hearing. It shows that petitioner was mentally competent because he participated meaningfully in the change of plea proceedings. Petitioner's participation and allocution was not limited to monosyllable answers to leading questions. Petitioner was eloquent and able to correctly answer questions of law posed by the Court. See *Id*.[7]

Moreover, petitioner fails to support his claim of mental incompetence. Petitioner's submission of Dr. Ibzán Pérez Muñoz's report dated April 8, 2019, **ECF No. 3-1 at 1-2**, detailing his mental health issues does not persuade the Court because the change-of-plea hearing occurred on August 14, 2014, which is almost 5 years prior. The fact that mental issues exist (if any) is not a per se bar to a finding of competency to plead guilty. *See Malmstrom*, 967 F.3d at 5.

Furthermore, petitioner's reliance on *Parra-Ibanez*, 936 F.2d at 594, is misplaced because the facts are distinguishable. While in *Parra-Ibanez* the defendant acknowledged using medication within 24 hours of the change-of-plea hearing, in the case at bar petitioner said that he had not taken medication within 48 hours of the change-of-plea hearing. **Crim. No. 14-380, ECF No. 42 at 6**. Nor does petitioner now assert that he was under the effects of medication

---

[7] The record reflects that throughout the pendency of the proceedings, petitioner was participating in state criminal proceedings and being debriefed by state authorities.

during the change-of-plea hearing. Rather, petitioner states that he received treatment until 2 weeks before the change-of-plea hearing. **ECF No. 1 at 13**.

In sum, petitioner does not establish that there was reasonable cause to believe he was unable to understand the nature and consequences of the proceedings against him. On the contrary, he participated meaningfully at the Rule 11 proceedings. It follows that petitioner's counsel did not render ineffective assistance because the result of the proceeding would not have been different.

ii.   *Cooperation and Discovery*

Petitioner's next argument is that his counsel rendered ineffective legal assistance by advising him that cooperation with the government would result in a lower sentence, rendering his guilty plea involuntary. **ECF No. 1 at 20-27**. He states that his counsel informed him that the government promised to recommend to the Court a sentence reduction if he cooperated and plead guilty, but in the end the government never requested a sentence reduction. *Id.* Furthermore, petitioner indicates that he never saw discovery materials or discussed them with his counsel, thus, it was impossible for him to waive his constitutional rights voluntarily and intelligently. *Id.*[8] He argues that his counsel was ineffective because a competent attorney would

---

[8]As previously discussed, petitioner was well aware of the discovery provided and the available evidence in his case. As it relates to his alleged cooperation, the record reflects that petitioner, although available to provide some information to state and federal prosecutors and having been debriefed, never entered into a or signed a cooperation agreement. The Court was so informed prior to sentencing through a Supplemental Sentencing Memorandum. **Crim. 14-380, ECF No. 252**.

not have his client extensively cooperate with law enforcement and plead guilty without a

signed cooperation agreement and without seeing discovery. *Id.*

Petitioner cites to statements made by his trial counsel that are not on the record that

support petitioner's proposition that she made no effort to demand discovery and that she told

him that the government promised him that his sentence would be reduced if he cooperated.[9]

**ECF No. 1 at 20-27.** Petitioner supports the existence of this supposed "verbal cooperation

agreement" with a proffer agreement letter, **ECF No. 3-1 at 3-4**, as well as his anecdotal evidence

that he was housed in a detention unit known to keep government cooperators and that he

extensively provided the government with information. **ECF No. 1 at 20-27**. Moreover, the Court

finds petitioner's argument concerning his claim of lack of discovery untruthful. A careful

review of the record reveals that petitioner was fully aware of the discovery:

> THE COURT: And have you discussed with either one or with both
> attorneys, the discovery, that means the evidence that the government has
> in its possession and intended to present at trial against you?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And have you had sufficient time to discuss with both or
> either one and mainly with attorney Brill, the options that you had, one
> being your Constitutional right to a trial, and second, your option of
> pleading guilty?
> THE DEFENDANT: Yes, Your Honor.

---

[9] The statements made by his trial attorney were not submitted as a separate exhibit but rather incorporated portions of the statements into the § 2255 motion itself. "A party's factual assertions in pleadings are not evidence and are not sufficient to establish material facts." *See Bbale v. Lynch*, 840 F.3d 63, 67 (1st Cir. 2016) (*citing Jupiter v. Ashcroft*, 396 F.3d 487, 491 (1st Cir. 2005)). Consequently, the Court will disregard the alleged statements made by his trial counsel as alleged by petitioner.

> THE COURT: And has she been able to clarify for you doubts that you had
> and information that you needed in the process of you reaching and making
> a final determination as to the course of action that you want to follow?
> THE DEFENDANT: Yes, Your Honor.

**ECF No. 42** at 7.

Even if the Court ignored petitioner's admissions, the claims are procedurally defaulted because he did not challenge the voluntariness of his plea on appeal. *See Acevedo-López*, 873 F.3d at 335-42. Petitioner cannot excuse his procedural default because he fails to allege actual prejudice. Petitioner states that "he would have not cooperated with the government and waived all of his rights if not for his attorney's representation that the government would ask for leniency at sentencing." **ECF No. 1 at 27**. Although he advances that he would not have "waived all of his rights," petitioner does not explicitly insist that he would have risked trial. *See Lockhart*, 474 U.S. at 59 (In the context of a guilty plea, to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial"). Therefore, petitioner's claim of ineffective assistance of counsel based on ill advice regarding cooperation and for withholding discovery, which allegedly resulted in an involuntary plea, is procedurally defaulted.

Moreover, the government responds that petitioner's allegation that cooperation would result in a lower sentence is belied by his statements under oath. **ECF No. 37 at 18-19**. It points out that both the plea agreement and the plea colloquy demonstrate that petitioner indicated that he was not promised a different sentence. *Id*. Therefore, it argues that the Court should not

permit petitioner to retract his own representations to the Court simply because it would suit

his convenience to do so. *Id.* (*citing United States v. Parrilla-Tirado*, 22 F.3d 368, 373 (1st Cir. 1994)).

As to the purportedly withheld discovery, in addition to the transcript of the change-of-plea

hearing, the government asserts that petitioner admitted during that same hearing that he

received and reviewed discovery with his counsel. The government also indicated, as

corroborated in the verbatim citations above, at the change-of-plea hearing in petitioner's

presence that it provided full discovery, and that the government turned over a voluminous

discovery package before petitioner requested a change of plea. **ECF No. 37 at 18-19**. The

government asserts that petitioner received discovery and that there was no doubt that

petitioner knew "what [he] ha[d] done, and has little cause for complaint if the district court

takes [him] at [his] word." *Id.* (*citing United States v. Teeter*, 257 F.3d 14, 28 (1st Cir. 2001)).

After reviewing the record, the Court holds that trial counsel provided effective legal

assistance because petitioner's allegation—that his counsel informed him of a promise from the

government to reduce his sentence if he cooperated and plead guilty—is clearly contradicted by

the record. *See United States v. Pulido*, 566 F.3d 52, 58 (1st Cir. 2009) (denying evidentiary hearing

because his allegations were contradicted by the record when petitioner contended that his

guilty plea was not voluntary and knowing due to his prior counsel erroneously representing

to him that the government agreed to recommend a sentence of 15 years if he immediately pled

guilty) (*citing United States v. Crooker*, 729 F.2d 889, 890 (1st Cir. 1984) ("defendant's allegations

need not be taken as true to the extent that they are 'contradicted by the record or are inherently

incredible and to the extent that they are merely conclusions rather than statements of fact'")).

In the written plea agreement as well as during the plea colloquy, petitioner affirmed that the

government had made no promises for a lenient sentence in exchange for his guilty plea. **Crim.**

**No. 14-380, ECF Nos. 37 at 7; 42 at 18, 25-26**. Hence, the record shows that petitioner denied that

there was any agreement with, or promise by, the government to recommend anything. *See*

*United States v. Torres-Rosario*, 447 F.3d 61, 67 (1st Cir. 2006) (holding that Court is "entitled to

give weight to [the defendant's] assurances at his change of plea [colloquy]" absent a "good

reason for disregarding them").

The change-of-plea record also shows that petitioner admitted to receiving discovery and

reviewing it with his counsel. **Crim. No. 14-380, ECF No. 42 at 6-7**. It depicts petitioner's counsel

admitting that she received discovery. *Id.* at 34. Moreover, the minute entry for the status

conference held on July 9, 2014, states that the government provided additional and a detailed

and comprehensive discovery package to petitioner's counsel that day, and his counsel

confirmed that she received it and requested time to review it with petitioner. **Crim. No. 14-380,**

**ECF No. 27**. Evidently, the record contradicts petitioner's allegations that he never reviewed

discovery. *See Torres-Rosario*, 447 F.3d at 67 (holding that Court is "entitled to give weight to [the

defendant's] assurances at his change of plea [colloquy]" absent a "good reason for disregarding

them").

Petitioner rebuts that the Court should not give conclusive weight to petitioner's representations. **ECF No. 1 at 20-27.** He argues that because "most defendants would be expected to deny any impropriety" during a plea colloquy, "courts have generally concluded that the Rule 11 record is 'evidential on the issue of voluntariness . . . not conclusive.'" *Id.* (*citing United States v. McCarthy*, 433 F.2d 591, 593 (1st Cir. 1970)). He posits that when an attorney represents to his client that the government promised to make a specific recommendation, petitioner is entitled to believe his counsel that such an agreement exists; and if counsel's representation induced his guilty plea, then relief is appropriate. **ECF No. 1 at 20-27** (*citing McAleney v. United States*, 539 F.2d 282, 285 (1st Cir. 1976) (affirming allowance of withdrawal of plea where defense counsel told his client that prosecutor agreed to a recommended sentence of three years, but no such promise was made)).

The Court is "entitled" to rely upon the defendant's assurances at the colloquy unless "there is good reason for disregarding them." *Pulido*, 556 F.3d at 59 (*quoting Torres-Rosario*, 447 F.3d at 67). The Court typically disregards representations at the plea colloquy "only when the allegations were highly specific and usually accompanied by some independent corroboration." *Id.* at 60 (*citing United States v. Butt*, 731 F.2d 75, 80 n.5 (1st Cir. 1984)). As explained below, Petitioner's allegations have no sufficient independent corroboration to warrant rejection of his representations at the change-of-plea hearing.

The only independent corroboration that petitioner provided is a proffer agreement letter. **ECF No. 3-1 at 3-4.** However, this proffer agreement letter contradicts petitioner's assertion that his counsel informed him that the government promised him to recommend a more lenient sentence. Upon examination of the proffer agreement letter, it explicitly states, "[b]y discussing these matters and by accepting [petitioner's] proffer, the United States does not intend in any way to agree to, or represent that it will, confer immunity upon [petitioner] for any possible federal criminal acts committed by him, nor has the United States made any representation or agreement about the disposition of any federal criminal charges which might be or have been filed against him." *Id.* Contrary to petitioner's assertion, no mention is made in the proffer agreement of petitioner obtaining a promise from the government to recommend a sentence reduction in exchange for his cooperation and guilty plea. Instead, the proffer agreement provided that "[i]n any prosecution brought against [petitioner] by the United States, the United States will not offer in evidence in its case-in-chief against [petitioner], or at sentencing of [petitioner], any statements made by [petitioner] pursuant to this proffer agreement . . ." *Id.* Consequently, the Court finds his plea colloquy as "evidential," but still sufficiently "conclusive" to contradict his claims.

### iii.   *Presentence Investigation Report*

Petitioner follows with the argument that his counsel rendered ineffective legal assistance for failing to request that the PSR be conducted by a different district court. **ECF No. 1 at 31-36.**

He believes that the Probation Office for the U.S. District Court of Puerto Rico was plagued by conflicts of interest that affected its ability to properly perform its official duties because the chief probation officer at that time, Eustaquio Babilonia-Hernández, is second cousins with the victim of the car accident, Mr. Félix Babilonia-Valentín, and first cousins with Anaudi Hernández. *Id.*

The government counters that petitioner makes no allegations that Emanuel Bravo, the probation officer who prepared the PSR, had any conflicts of interest or that the chief probation officer participated in its drafting or was involved in any other capacity. **ECF No. 37 at 19-20** (*citing* **Crim. No. 14-380, ECF No. 259**). It explains that Emanuel Bravo "exercise[d] his independent judgment as to the application of the guidelines." *Id.* (*citing United States v. Fraza*, 106 F.3d 1050, 1056 (1st Cir. 1997)). In addition, the government responds that petitioner cannot demonstrate that he was prejudiced by any particular information within the PSR or by the chief probation officer's because the Probation Office's recommended guideline calculations were ultimately determined by the Court and affirmed on appeal. *Id.* Consequently, the government claims that petitioner cannot establish that it is reasonably probable that his counsel's failure to request that the PSR be prepared by a different district court would have produced a different result. *Id.* This turns to be of significance in this case where the sentencing judge presided over a lengthy trial where detailed evidence was presented.

To satisfy the prejudice prong, petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Tevlin*, 621 F.3d at 66. He must establish "a probability sufficient to undermine confidence in [that] outcome." *Id.*

Here, petitioner fails to establish a reasonable probability that the result of the proceeding would have been different because it does not undermine the Court's confidence in his sentence. The probation officer that prepared the PSR had no apparent or actual conflicts of interest. **Crim. No. 14-380, ECF No. 259**. More so, petitioner never raised such argument while submitting multiple objections to the pre-sentence report. **Crim. 14-380, ECF No. 246**. Neither did he raise such arguments when denied bail as per recommendation of Probation Officer Bravo even if the PreTrial Services Division was headed by Mr. Eustaquio Babilonia. Moreover, the Court made its own findings based on the trial evidence to impose the sentence, which the First Circuit affirmed. *See Acevedo-López*, 873 F.3d at 335-42. The Court is not convinced by petitioner's argument that his sentence would have been different had the PSR been drafted by another probation office because as the First Circuit noted, "[c]onsidering the serious and corrosive nature of [petitioner's] crimes, it would have been more than appropriate for the district court to have imposed an even higher sentence." *Id.* at 342.

### iv. *Mitigation Evidence*

Petitioner continues by claiming that his counsel was ineffective for failing to present mitigation evidence at sentencing regarding the extent of his cooperation with state and federal law enforcement. **ECF No. 1 at 39-46**. He claims that his counsel was unprepared to present mitigation evidence because she failed to request the FBI's Interview Report Form from petitioner's debriefings with federal law enforcement. *Id.* He also claims that his counsel was ineffective because she refused to comply with petitioner's request to present his cooperation report at sentencing. *Id.* (*citing* **ECF No. 3-1 at 5-34**).

Petitioner also asserts that his counsel was unfamiliar with his case because she failed to substantiate petitioner's cooperation with specificity at the sentencing hearing. *Id.* He points out the fact that the Court remarked at the sentencing hearing that an informative motion detailing the extent of his cooperation would have been deeply appreciated and that his counsel incorrectly informed the Court that no cooperation agreement had been reached. *Id.* (*citing* **Crim. No. 14-380, ECF No. 266 at 72-73**). Petitioner explains that his counsel left out his cooperation as to the Puerto Rico Office of the Special Independent Prosecutor Panel's case against ex-prosecutor Joseph Esparra and the Puerto Rico Department of Justice's case against Senator Jaime Perelló. *Id.* (*citing* **ECF No. 3-1 at 35-46**). He indicates that, in total, he provided the Government with useful information as to 35 corrupt individuals. *Id.* (*citing* **ECF No. 3-1 at 5-**

**34**). Regardless of any agreement reached within the state prosecution, at Federal level there was no cooperation agreement.

Petitioner also argues that his counsel was ineffective for failing to present additional mitigating factors that humanized him before the Court. **ECF No. 1 at 46-50**. Although he concedes that his counsel referenced his drug addiction and alcoholism in order to permit the Court to understand how he ended up in this situation, petitioner asserts that his counsel was ineffective because she failed to present scientific and medical evidence as to how a bipolar disorder interacts with alcoholism and drug abuse. *Id.* He claims that his counsel never developed a meaningful mitigation theme because she did not interview petitioner's family to capture the story of his decline. *Id.* Petitioner also faults his counsel for not raising the following purported mitigation factors: (1) childhood neglect, (2) mental impairment, (3) personal characteristics, (4) self-improvement efforts, (5) love for his family, (6) drug and alcohol addiction, (7) cooperation with authorities, and (8) good behavior in prison. *Id.* Petitioner also contends that the following mitigating evidence should have been included in the PSR: (1) his immediate cooperation with the victim's life insurance to provide payments to the victim's family, (2) his payment covering the victim's funeral expenses, (3) his payment of educational expenses for the victim's family, (4) his waiver of a probable cause/preliminary hearing, (5) his guilty plea, (6) his tarnished reputation, and (7) the fact that he had never been imprisoned before. **ECF No. 1 at 34-36**.

The government opposed contending that these claims are contradicted by the record because his attorney did indeed present mitigation evidence. **ECF No. 37 at 20-21** (*citing* **Crim. No. 14-380, ECF Nos. 249; 266 at 13-77**).

"Merely raising potentially mitigating factors does not guarantee a lesser sentence." *United States v. Dávila-González*, 595 F.3d 42, 49 (1st Cir. 2010). "A criminal defendant is entitled to a weighing of the § 3553(a) factors that are relevant to [his] case, not to a particular result." *Id.* The fact that the Court stated that it had considered all the § 3553(a) factors is entitled to some weight. *See id.*

After scrutinizing the record, the Court finds that petitioner's counsel was not deficient because she did indeed present mitigation evidence. Petitioner' sentencing memorandum is filled with references to the extent of his cooperation (by confessing in a timely manner) and paints a picture that humanizes him. **Crim. No. 14-380, ECF No. 249 at 3-11.**[10] It presents

---

[10] *See inter alia*: "[h]is determination to plead and cooperate was immediate, genuine and meaningful." **Crim. No. 14-380, ECF No. 249 at 7.** "Mr. Acevedo immediately confessed and however imperfectly, expressed a desire to help." *Id.*, at 5. "Within less than three months after confessing to the FBI, Mr. Acevedo made manifest his desire to enter a guilty plea and be debriefed by the authorities. Throughout the summer and fall of 2014 he engaged in numerous interviews about a myriad of topics, providing important details, as well as physical and documentary corroborating evidence." *Id.*, at 6. "Mr. Acevedo did not simply confess, he submitted - and continues to submit - to the questioning of prosecutors and agents about the facts of this case as well as other wrongdoing." *Id.*, at 7. "Mr. Acevedo has also reached out in a completely similar vein to the local authorities - that is, he has gone to them, pro-actively through counsel (beginning with the undersigned), presenting sincere contrition and a desire for resolution. In addition, he has been interviewed by local authorities, and has provided documentary and other physical evidence regarding the crimes and corruption of a local prosecutor and police commander. That prosecutor has been suspended for his involvement in Mr. Acevedo's case." *Id.*, at 8. "He has never contested the government's evidence. He was debriefed for what amounts to days, always willing to answer any and all questions from the prosecutors and the agencies. He is not protecting anyone, and has never held back on whatever he can provide." *Id.*, at 8.

petitioner's life story of losing his father at a young age and rising to the occasion but was nevertheless held back from success due to his addiction and bipolar disorder. *Id.*

Furthermore, the Court took into consideration a myriad of petitioner's circumstances. **Crim. No. 14-380, ECF No. 266 at 82-106**. Considering "the seriousness of the offense and all of the factors," the Court determined that his circumstances did not warrant a guideline sentence. *Id.* at 105-06. Although the Court did not specifically reference all the mitigating circumstances that petitioner now highlights, the sentencing transcript, read as a whole, evinces a sufficient weighing of the § 3553(a) factors. *See Dávila-González*, 595 F.3d at 49 (so holding). As such, petitioner does not establish a reasonable probability that his sentence would have been lower had the aforementioned mitigation evidence been provided.

v. *Prior Acts*

Undeterred, petitioner argues that his counsel was ineffective because she failed to investigate several incidents that the Court used to vary his sentence. **ECF No. 1 at 50-62**. Petitioner claims that had his counsel investigated these incidents, objected to them in the PSR, and provided the Court with the correct version of events, then there was a reasonable probability that petitioner's sentence would have been lower. *Id.* Specifically, petitioner faults his counsel for not investigating the: (1) Mesa Criolla Restaurant incident, (2) Joseph Esparra incident, and (3) Rafael Lorenzo-López ("Rafi") incident. *Id.*

The First Circuit described the Mesa Criolla Restaurant incident as follows:

> According to the investigative agents, in the event known as the Mesa Criolla Incident, on August 23, 2010, at 1:17 am at [M]esa Criolla Restaurant in Moca, PR, video documentation displays [petitioner] brandishing a firearm to Orlando Soto, owner of the restaurant, and Steven P[é]rez–H[é]rnandez, employee, after a verbal altercation. A day after the incident, Orlando Soto alleged that two individuals, Eliezer Vega Mercado and Elliot Medina Pellot, entered his business and assaulted him on behalf of the [petitioner].
>
> At [petitioner's] pretrial detention hearing, the Assistant United States Attorney (the "AUSA") proffered evidence about the Mesa Criolla Incident. The proffer included that [petitioner] got into a fight with an off-duty police officer at the Mesa Criolla Restaurant. After the officer left, the restaurant's owner asked [petitioner] to leave. [Petitioner] then brandished a gun and threatened to kill the owner and an employee. An employee disarmed [petitioner], but [petitioner] later returned and demanded the restaurant's surveillance footage. When the owner refused, [petitioner] threatened him and left. Three men then came to the restaurant, asked the owner "whether he was the one that had the problem with [petitioner]," then beat the owner. The proffer was supported by photographs of the owner's face and videotape of the beating.
>
> Two men pled guilty to assault related to this incident. In addition, [petitioner] was charged in connection with the Mesa Criolla Incident, but all charges were dismissed.

*Acevedo-López*, 873 F.3d at 339. In addition, the First Circuit narrated the Rafi incident as follows:

> [petitioner] "was involved in an altercation with [his cousin Rafi], in which [petitioner] brandished a firearm. Subsequently, [petitioner] made life threats via text messages against his cousin, who ultimately abandoned the jurisdiction for fear of death."
>
> Rafi also testified about this incident at [Acevedo-Hernández's] trial. Relying on Rafi's testimony, the district court found that [petitioner] "pulled a gun and pointed it at [Rafi] while threatening to kill him." Rafi subsequently filed a complaint with the state police, and [petitioner's] relative, a police lieutenant, tried to convince Rafi not to pursue the complaint. That night, [petitioner] "began to send threatening [text] messages" to Rafi, including threatening to take Rafi's son. Eventually, [Petitioner] purchased a plane ticket for Rafi to leave Puerto Rico, and the complaint was dismissed because Rafi was not present to press charges.

*Id.* Lastly, the PSR describes the Joseph Esparra incident indicating:

> According to official court documents, on April 18, 2012, in Aguadilla, PR, [petitioner] and Joseph E. Esparra-Álvarez, who at the moment was an Interim District Attorney for the Judicial Region of Aguadilla, PR, conspire to knowingly and willingly destroy and disappear documental evidence known as "post-notes" as the same contained proof of bribery in violation of the PR Government Ethics Code. According to the criminal complaint, this evidence was destroyed and flushed in the toilette of Attorney Ivan Crespo-Arroyo's office bathroom.

**Crim. No. 14-380, ECF No. 259 at 20**.

The government opposes by first noting that petitioner is attempting to relitigate the Court's interpretation of the Mesa Criolla Restaurant and Rafi incidents and its impact on sentencing. **ECF No. 37 at 21-23**. As argued by the government, it must be noted that the First Circuit affirmed the Court's reliance on, and the reliability of, these two incidents. *Id.* (*citing Acevedo-López*, 873 at 339-341). As such, the government correctly argues that petitioner "may not revive claims already decided on direct appeal by cloaking them in 'ineffective assistance of counsel' garb in a § 2255 petition." *Id.* (*citing Dowdell v. United States*, 859 F. Supp. 2d 176, 178-79 (D. Mass. 2012)). Furthermore, even if trial counsel did fail to advance alternate narrations of these three incidents, this omission it is inconsequential because these three incidents were not the driving force for the imposition of his sentence as explained before. *Id.*

A § 2255 motion is not a substitute for a direct appeal. *See Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (*citing Frady*, 456 U.S. at 165). Accordingly, as a general rule,

federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal. *See id.*

In the present case, the First Circuit noted that the Court relied on the Mesa Criolla Restaurant and Rafi incidents as evidence of petitioner's violent history, threats, and efforts to silence witnesses. *See Acevedo-López*, 873 F.3d at 340. As an initial matter, it held that the Court could treat the summaries of these two incidents in the PSR as true for sentencing purposes because petitioner did not object to them. *See id.* (*citing United States v. Ocasio-Cancel*, 727 F.3d 85, 91-92 (1st Cir. 2013)). However, because the Court made additional findings related to these incidents, the First Circuit addressed petitioner's arguments that the evidence for these incidents was unreliable, which primarily consisted of the AUSA's hearsay proffer. *See id.* The First Circuit found that the hearsay proffer was corroborated by text messages, live testimony, photographs, video, and court records. *See id*. Thus, it held that the Court did not err in finding that petitioner was involved in these two incidents and that they supported an upward variance. *See id.* (*citing United States v. Rodríguez*, 336 F.3d 67, 71 (1st Cir. 2003) ("[T]he sentencing court has broad discretion to accept hearsay evidence at sentencing so long as the court supportably concludes that the information has sufficient indicia of trustworthiness to warrant a finding of probable accuracy")). Consequently, petitioner is foreclosed from seeking collateral review as to the analysis and relevance to sentence of the Mesa Criolla Restaurant and Rafi incidents because the

First Circuit had already examined petitioner's arguments and has held that the Court did not err in making its findings.

As to the Joseph Esparra incident, the result of the proceeding would not have been different had the Court considered petitioner's version of the facts. According to petitioner unsubstantiated version, "that it was petitioner who was assaulted at Mesa Criolla." **ECF No. 1 at 54**. The Court found that petitioner's engagement "and being part of systematic and pervasive corruption of governmental function, that without a doubt have caused a loss of public confidence and [t]rust in the Puerto Rico Judiciary. Actually[,] that was one of the things that originally lead me to consider the possibility of [variance] under 5K2.7[.]" **Crim. No. 14-380, ECF No. 266 at 88-89**. Considering "the seriousness of the offense," the Court sentenced petitioner to 108 months of imprisonment. *Id.* at 105-06. As previously pointed out, the First Circuit concluded that "[c]onsidering the serious and corrosive nature of [petitioner's] crimes, it would have been more than appropriate for the district court to have imposed an even higher sentence." *See Acevedo-López*, 873 F.3d at 342. Therefore, the Court holds that petitioner's sentence would not have been different had the Court considered petitioner's new, unsubstantiated version of the facts, described above (*i.e.* that petitioner was the victim of the aggression by Joseph Esparra).

b. Due Process

Petitioner posits that the government violated his due process rights by inducing him to plea guilty under an agreement that: (1) contains a lower value for Acevedo-Hernández 's bribe than that the government had said it could prove at his detention hearing for the base offense level under U.S.S.G. § 2C1.1(b)(2), (2) has an inconsistent number of participants for the determination of the leadership enhancement under U.S.S.G. § 3B1.1, (3) does not clarify that the sentencing guideline calculations are advisory, and (4) incorrectly informs of the consequences of his plea. **ECF No. 1 at 14-20**. Petitioner proclaims that if the government had provided the adjusted offense level of 27 (70-87 months) ultimately used by the Court rather than the adjusted offense level of 23 (46-57 months) indicated in the Rule 11(c)(1)(B) plea agreement, then he would have taken his chances and gone to trial or negotiated a Rule 11(c)(1)(C) plea agreement. *See id.* However, the record shows that petitioner was well aware of the advisory nature of the computation included in the Plea Agreement. To wit, inter alia:

> THE COURT: Any doubts concerning the consequences of you pleading guilty?
> THE DEFENDANT: No, Your Honor.
> THE COURT: At this time I find the defendant fully aware of the penalties to which he is exposed, the maximum statutory penalties, the guideline computations and the fact that the guidelines are advisory in nature. That he is satisfied with counsel and also with the Constitutional rights that he waived… This plea agreement is being signed by the representatives of the U.S. Attorneys Office here in Puerto Rico, by the attorneys, trial attorneys of the Public Integrity Section, by attorney Brill and by you, correct?
> THE DEFENDANT: Yes, Your Honor.

> THE COURT: […] I want you to understand that the Sentencing Guidelines
> are advisory in nature. They are not binding upon the Court. While the
> Sentencing Guidelines may provide for a range and suggest that that range
> may be the proper sentence in a case, the Judge remains free either to go
> below the recommended range or to go above the higher end of that range.
> Because the Court remains with the full discretion of imposing a sentence
> up to the statutory maximum of ten years in Count 2 and five years in Count
> 1, do you understand that?
> THE DEFENDANT: Yes, Your Honor.

**ECF No. 422 at 13**.

Petitioner also argues that the government violated his due process rights by inducing him to plead guilty via: (1) making him a verbal promise during the second debriefing that it would request a sentence reduction if he cooperated and (2) stipulating within the supplemental sentencing memorandum and plea agreement supplement that a formal cooperation agreement would be forthcoming. **ECF No. 1 at 27-30** (*citing* **Crim. No. 14-380, ECF Nos. 38 and 252**). Therefore, petitioner advances that the Court should vacate his sentence and order the government to specifically perform the promised action, to wit, request a sentence reduction. *See id*. In addition, he contends the government violated his due process rights when it failed to disclose evidence or information material to his punishment pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). **ECF No. 1 at 37-39**. He posits that the government failed to disclose its evaluation of petitioner's assistance in the investigation and prosecution of other individuals. *See id*. He believes that if this information had been disclosed, then there would have been a reasonable probability that his sentence would have been lower. *See id.*

The government opposes explaining that petitioner never asserted due process challenges against the government on direct appeal and, thus, such claims are procedurally defaulted. **ECF No. 37 at 23-24** (*citing Bousley*, 523 U.S. at 621). *See id.* at 24-28. Nonetheless, the record reflects that Federal prosecutors informed the sentencing court of petitioner's participation at debriefings and any assistance provided. Crim 14- 380, ECF No. 250 and 252, *see* Sentencing Memorandum.

A § 2255 motion is not a substitute for a direct appeal. *See Frady*, 456 U.S. at 165. A significant bar on habeas relief is imposed when a petitioner does not raise claims at trial or on direct appeal. *See Owens v. United States*, 483 F.3d 48, 56 (1st Cir. 2007). The Court may hear those claims for the first time on habeas review only if the petitioner has "cause" for defaulting his claims and suffered "actual prejudice" from the errors of which he complains. *See id.*

In the case-at-hand, petitioner never made a due process challenge on appeal. *See Acevedo-López*, 873 F.3d at 335-42. His challenges were all directed to the substantive as well as procedural reasonableness of petitioner's sentence and did not raise any due process violations against the government. *See id.* Hence, these due process claims are procedurally defaulted. Petitioner never showed good cause for the procedural default. Therefore, petitioner's due process arguments fail. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived . . . It is not enough merely to mention a possible argument in the most

skeletal way, leaving the Court to do counsel's work, create the ossature of argument, and put flesh on its bones"); *Compare Flores-Rivera v. United States*, 16 F.4th 963, 967 (1st Cir. 2021) (petitioner's argument that the government violated her due process rights by failing to produce relevant documents was not procedurally defaulted because her counsel correctly asserted that she can demonstrate cause if she can establish that by failing to raise the *Brady* issue on direct appeal, her appellate counsel rendered ineffective assistance of counsel).

### III.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Here, because petitioner's claims of ineffective assistance of counsel and due process violations are either meritless or procedurally defaulted, and, at essence, petitioner seeks only a sentence reduction, the Court finds that he has failed to make a substantial showing of the denial of a constitutional right. *See Rodríguez-Orellana v. United States*, 233 F. Supp. 3d 270, 280 (D.P.R. 2017). As a result, his COA is **DENIED**.

## IV.    Conclusion

For the foregoing reasons, the Court **DENIES** petitioner's § 2255 motion. **ECF No. 1**. The

Clerk of  Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2022.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**